UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Marc Henry Smith,

    Plaintiff

 v.

Randy Dockery, et al.,

    Defendants

Case No. 2:20-cv-02261-CDS-BNW

**Order Granting Defendants' Motion for Summary Judgment**

[ECF No. 19]

  Pro se plaintiff Marc Henry Smith brings this civil-rights action under 42 U.S.C. § 1983 against various officers working for the Las Vegas Metropolitan Police Department (LVMPD), namely, Sergeant Randy Dockery, Detective Daniel Weber, Detective Aaron Grays, Detective Michael Franco, and Detective Ashley Ravelo (née Perez). Smith called LVMPD to request emergency assistance when he believed that a group of intruders was breaking into his house. When the officers arrived, they found no evidence of an intrusion. They did, however, find Smith's illicit marijuana farm. Smith alleges that the defendants violated his Fourth and Fourteenth Amendment rights when they (1) arrested him, (2) searched his house, and (3) confiscated his marijuana plants. The defendants now move for summary judgment against all three claims. Because I find that Smith has failed to provide adequate evidence to support his claims and that no genuine issues of material fact remain for trial, I grant defendants summary judgment on each claim and order this case closed.

## I.   Relevant Background Information

  On December 8, 2018, Smith called 911 more than fifty times alleging that someone was breaking into his garage and stealing his marijuana plants. Franco Decl., Ex. A, ECF No. 19-2 at

9; Compl., ECF No. 5-1 at 8; Bodycam Footage, Ex. K, ECF No. 19-2 at 19:45–21:00.[1] Non-party police officers arrived around 10:00 a.m., at which point Smith asked them to enter his house and view security-camera footage of the garage wherein he grew his marijuana plants. ECF No. 19-2 at 9. Smith also said the only way to access the unattached garage was through the backyard. Bodycam Footage at 3:30–3:45. The officers entered the house, looked at the security camera, performed a protective sweep, and saw no intruders—but they did see evidence of an illegal marijuana grow in Smith's garage.[2] *See e.g.*, ECF No. 19 at 9; Bodycam Footage at 7:00–10:00. They then searched the house again for intruders before exiting into the backyard in an attempt to enter the garage. Bodycam Footage at 10:45–12:15. It was locked, and the officers could not see evidence of the alleged break-in. *Id.* at 12:15–14:45.

Subsequently, the officers handcuffed Smith for an alleged misuse of 911's emergency dispatching services. ECF No. 19-2 at 9. Smith, however, claims the officers handcuffed him to control the situation and that he respectfully submitted to the detainment. ECF No. 5-1 at 8. The officers asked to search Smith's garage—which is separate from the house—and Smith refused. *Id.* at 9–10. The officers then called the LVMPD Narcotics Unit to investigate the marijuana farm, and the defendants arrived on the scene. ECF 19-2 at 9.

Detective Weber read Smith his Miranda rights, and Smith confirmed he understood those rights. *Id.* The parties' recounting of the conversation then diverges. According to Weber, Smith stated he was selling his marijuana plants to other growers every four months instead of using them for medicinal purposes. *Id.* at 9–10. Each four-month cycle would elicit about $9500. *Id.* at 10. If Smith could not sell the marijuana, then he would make edibles—the officers found

[1] ECF No. 19-2 contains multiple exhibits. Exhibit K therein is the bodycam footage from Officer Robert Bell. Throughout this order, I refer to it as "bodycam footage." Furthermore, counsel for the defendants is reminded to comply with the local rules for attaching exhibits to filings, as they require each exhibit to be attached as a separate file and individually identified when it is filed in the court's electronic filing system. LR IC 2-2(a)(3).

[2] Nevada marijuana laws allow a person to grow only twelve marijuana plants so long as the person does not live within twenty-five miles of a dispensary. NRS § 453.3393. Officers counted at least twenty plants on the recording, and Smith's residence was within twenty-five miles of a dispensary regardless. ECF No. 19-2 at 13.

ten pounds of marijuana products after the search warrant. ECF No. 19-2 at 10, 12.

Because Nevada law allows citizens to grow marijuana within a twenty-five-mile radius of a dispensary if the dispensary does not sell the specific strain,[3] Detective Weber, and then eventually Sergeant Dockery, asked Smith what strain he grew in his garage. ECF No. 9-2 at 10. Smith responded that he named it after his social security number, and that he cross-pollinated it from two different strands. *Id.* According to Detective Franco, the cross-pollination process he described would not produce the amount of product that Smith stated he harvested from his plants. *Id.* Smith also never provided a National Cannabis Industry Association strand registration number when the defendants asked.[4] *Id.*

Smith's version of the facts—liberally construed—states the conservation between him and Detective Weber involved him explaining how his grow conformed with Nevada law. ECF 1-1 at 9–11. He affirms that he did not grant permission to the LVMPD officers to search his garage, and he disputes the defendants' version of the facts as "fictional at best." *Id.* at 9–10; Resp., ECF No. 24 at 3. He states that that he and his roommate had valid medical marijuana cards to account for the 24 plants in his garage, and that he was growing his medicine in conformance with Nevada law. ECF No. 5-1 at 10. When the police asked who the roommate was, Smith stated he was "not at home at the time of the incident." ECF No. 5-1 at 9. Sergeant Dockery's account of the conversation states that Smith said his roommate lived with his girlfriend. ECF No. 19-2 at 12–13. The girlfriend later confirmed that information. *Id.*

Detective Franco then applied for a telephonic search warrant for Smith's garage and house looking for marijuana and related paraphernalia. Telephonic Warrant Application, Ex. B, ECF No. 19-2 at 17. In the affidavit, Franco used three key facts to show probable cause including: (1) the 911 dispatcher's comments that Smith said he was illegally growing

---

[3] This law was repealed in 2019, but the events in question occurred in 2018. *See* 2019 NRS § 3896.

[4] The NCIA maintains a national registry of cannabis strains to add legitimacy to the Marijuana market. *See generally National Cannabis Industry Association* (2023), https://thecannabisindustry.org/.

marijuana,[5] (2) Smith's comments that he was selling his harvested marijuana, and (3) the responding officers seeing double the number of allowable marijuana plants on the security camera. *Id.* at 17–19. The search warrant was granted, and the LVMPD officers searched Smith's house and garage. ECF No. 19-2 at 11. They confiscated his plants, and Smith was never able to recover them. ECF No. 19-2 at 4.

## II.    Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

42 U.S.C. § 1983 creates a cause of action against a person acting under the color of state law to deprive another person of a constitutionally guaranteed right. *Jones v. Williams*, 297 F.3d

---

[5] This seems to be a miscommunication as Smith, in one of his calls to the dispatcher, said he had a "legal marijuana grow," but the dispatcher reported to the police that Smith said he had an "illegal marijuana grow."

930, 934 (9th Cir. 2002). Section 1983 does not create any right; it is a vehicle for plaintiffs to challenge actions by government officials. *Id.* To prevail on a § 1983 claim, a plaintiff must show that the defendants (1) violated the plaintiff's constitutional right (2) under the color of state law. *Id.*; *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

III.    **Discussion**

Plaintiff Marc Smith alleges that the defendant police officers "illegally searched [his] residence, falsely arrested [him]" and "destroyed [his] property." ECF No. 5 at 5. I liberally construe Smith's filings as he is a pro se plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). He asserts his causes of action against the defendants under the Fourth and Fourteenth Amendment. *See Monroe v. Pate*, 365 U.S. 167, 168–71 (1961) (holding that a plaintiff may bring a § 1983 claim under the Fourth and Fourteenth Amendments for an unreasonable search or seizure and for the deprivation of property without the due process of law).

For each of the three claims, there is no genuine dispute of fact that defendants were working under the color of state law. Answer, ECF No. 7 at 1. So, Smith must then show that the officers violated established rights for each of his three claims. He cannot do so: defendants' search was legal, Smith's arrest was proper, and the destruction of his property was justified by law.

a.    *Unlawful search*

i.    *Consent and protective sweep*

Defendants claim that there is no genuine dispute that their search of Smith's residence was lawful. Smith argues it was unlawful because the officers lacked consent or probable cause. ECF No. 5 at 5. For Smith to succeed on a § 1983 claim for an unlawful search, he must show that the police officers "conduct[ed] . . . an unreasonable search or seizure." *Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018). A reasonable search warrant precludes a § 1983 claim against an unlawful search. *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1076 (9th Cir. 2018). A search warrant is unreasonable if it is unsupported by either a warrant or probable cause. *Id.* at

1   1075 (citing *Michigan v. Clifford*, 464 U.S. 287, 293 (1984)). However, officers may search a home

2   without a search warrant if certain exceptions apply—consent is one such exception. *Florida v.*

3   *Jimeno*, 500 U.S. 248, 250–51 (1991); *Pike v. Hester*, 891 F.3d 1131, 1137 (9th Cir. 2018). But the search

4   must be within the scope of consent. *Jimeno*, 500 U.S. at 251. A protective sweep is another

5   exception. *Maryland v. Buie*, 494 U.S. 325, 334–35 (1990). A protective sweep is "aimed at

6   protecting the . . . officers, if justified by the circumstances." *Id.* at 335. But the sweep must last

7   no longer than to "dispel the reasonable suspicion of danger." *Id.*

8          Here, the LVMPD officers entered Smith's residence at two different times. The first

9   time, Smith admits that he gave the officers permission to enter his house and look at his

10  security camera footage. ECF No. 24 at 2. The officers entered the house, looked at Smith's

11  camera footage, and thereupon saw the (seemingly illegal) marijuana farm. ECF No. 19-2 at 9.

12  They then performed a protective sweep of the house because Smith had called the police

13  alleging multiple people were breaking into his property. Bodycam Footage at 10:45–12:15; 911

14  Call, Ex. E, ECF No. 19-2 at 12:30. Thus, for the first search, I find that the defendants have

15  demonstrated that they reasonably searched Smith's house based on Smith's consent and on

16  their need to perform a protective sweep to dispel the suspicion of danger. Smith fails to provide

17  any evidence to the contrary; thus, there is no genuine dispute of material fact.

18                  ii.   *Material omission on search warrant*

19          Smith also contends that the LVMPD officers violated his Fourth Amendment rights the

20  second time they searched his house because Detective Franco omitted a material fact from the

21  search warrant affidavit, specifically, the fact that Smith had a medical marijuana card. A law

22  enforcement officer has a duty to provide, in good faith, all relevant information to the granting

23  judge. *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). A search warrant is invalid if the

24  police officer "knowingly and intentionally, or with [a] reckless disregard for the truth" made

25  false statements or omitted facts that were "necessary to the finding of probable cause." *Franks v.*

26  *Delaware*, 438 U.S. 154, 156 (1978). But if the misstatements or omissions were not necessary to

the finding of probable cause, then the warrant is still nonetheless valid.[6] *Id.*

The second time the officers searched Smith's residence was after the officers received a telephonic search warrant from Nevada's Eighth Judicial District. Warrant App., Ex. B, ECF No. 19-2 at 15–22. The affidavit was based, among other things, on three key facts: (1) the officers saw more than twelve marijuana plants in his garage when they looked at the security camera footage, (2) the conversation Smith had with officer Mead stating he sold his product illegally, and (3) the 911 operator stating that Smith said his grow was illegal. I*d*.

Smith contends that Franco, in the affidavit, said Smith's medical marijuana card was expired and "knowingly, willingly, and intentionally omitted" his roommate's medical marijuana card. ECF No. 5 at 14. But Franco did not use the expired medical marijuana card in the search warrant affidavit. ECF No. 19-2 at 18–19. And the detectives had confirmed that Smith's roommate lived with his girlfriend rather than at Smith's residence. ECF No. 19-2 at 12–13. Thus, Franco's non-inclusion of the marijuana cards would not have changed the probable cause analysis. Nevada's laws only allow twelve marijuana plants per medical marijuana card, and it expressly restricts the selling of marijuana grown for medicinal purposes. NRS § 453.339. Smith's marijuana card would only have allowed twelve marijuana plants in the garage. And Smith's assertions that the other twelve were his roommates were not material facts relevant to the warrant application because the detectives determined that Smith's information was not credible, and that Smith lived alone. ECF No. 19-2 at 12–13. Thus, I find the stated probable cause in the warrant application reasonable. Smith provides no other evidence challenging the three claims used in support of the search warrant affidavit. Thus, for the second search, there is no genuine dispute that the warrant was obtained reasonably, which precludes any genuine dispute as to Smith's § 1983 claim for an unlawful search. The defendants have met their burden and summary judgment is thus appropriate on Smith's first cause of action.

---

[6] Smith has not made a motion requesting a separate *Franks* hearing, nor has he provided evidence he did so in the criminal case brought against him in state court. He only asserts this material omission in his original complaint and again his response to summary judgment.

1            *b.   Unlawful detention*

2            Defendants claim that there is no genuine dispute that their arrest of Smith was lawful.

3   Smith argues that the detention was unlawful. For him to succeed on a § 1983 claim for an

4   unlawful detention, he must show that the police had no probable cause to detain him in

5   violation of the Fourth Amendment. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir.

6   1998). If an officer had probable cause to detain a person, that precludes a successful § 1983

7   claim. *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010). Probable cause is an objective

8   standard viewed from the standpoint of an "objectively reasonable police officer." *Maryland v.*

9   *Pringle*, 540 U.S. 366, 371 (2003). The standard is contextual and asks whether the reasonable

10  officer, through the known facts and circumstances, would expect that evidence of a crime

11  would be found. *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996).

12            An officer has probable cause to arrest someone even if they believe the person has

13  committed a crime that would normally not require an arrest. *Virginia v. Moore*, 553 U.S. 164, 171–

14  72 (2008). In *Moore*, the suspect was driving with a suspended license. *Id.* at 166–67. The police

15  officer arrested him even though the state's law mandated that officers should only serve a

16  summons for the alleged violation. *Id.* The Supreme Court held that arrest did not violate the

17  Fourth Amendment and the minor offense itself was enough to satisfy probable cause. *Id.* at 171.

18  The Ninth Circuit extended this ruling when it held that a police officer had probable cause to

19  arrest a suspect when that suspect did not produce their driver's license. *Demarest v. City of Vallejo,*

20  *California*, 44 F.4th 1209, 1225 (9th Cir. 2022).

21            Here, the LVMPD officers detained Smith for his misuse of 911 under NRS § 207.245.

22  ECF No. 19-2 at 9. The statute outlaws calling emergency services "when no actual or perceived

23  emergency exists." NRS § 207.245. Someone who violates this statute is guilty of a gross

24  misdemeanor. *Id.* A gross misdemeanor may be punished by imprisonment under Nevada law.

25  NRS § 193.140. A "reasonable police officer" could have easily found sufficient evidence to satisfy

26

1  the probable cause requirement of NRS § 207.245 and did not act unreasonably in imprisoning

2  Smith as a result.

3       The defendants assert that they detained Smith because he had called emergency services

4  more than fifty times, and "there was nothing suspicious on hand or in the area." Bodycam

5  Footage at 19:45–21:00. Smith alleged that four men had drilled a hole into his garage and were

6  attempting to rob his marijuana farm. ECF No. 19-2 at 8–9. Yet the officers did not see anyone on

7  the security camera showing the garage nor did they see any evidence of a break-in to the house

8  or the garage. *Id.* At that point, a reasonable police officer had probable cause that Smith had

9  violated NRS § 207.245 for misuse of emergency services. Smith does not challenge the facts

10 provided by defendants. I therefore find no genuine dispute of material facts relating to whether

11 the defendants had probable cause to arrest Smith. Summary judgment is thus appropriate on

12 Smith's unlawful detention claim.

13      *c.   Deprivation of property*

14      Defendants claim that there is no genuine dispute that the seizure of Smith's Marijuana

15 plants was lawful. Smith argues that they deprived him of his property without due process in

16 violation of the Fourteenth Amendment. ECF No. 5 at 5. A plaintiff can successfully assert a

17 § 1983 claim for the intentional deprivation of property—using the Fourteenth Amendment's

18 Due Process Clause—only if there is no state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S.

19 517, 533 (1984). But if state law provides an "adequate post-deprivation remedy" then the § 1983

20 claim is not cognizable. *Id.* State, common-law remedies satisfy the post-deprivation remedy

21 requirement. *Id.* at 534–35. It is the plaintiff's responsibility to show that they were denied

22 adequate post-deprivation remedies. *Id.*; *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1227–28 (9th

23 Cir. 2021).

24

25      Here, Smith has a potential tort remedy available for an alleged unconstitutional

26 deprivation of his property. *See* NRS § 41.031 (establishing that Nevada—and all its

subdivisions—has waived its sovereign immunity from liability in civil actions). Smith may have had a viable claim for the deprivation of his property, but he has failed to show in his pleadings why the state-law remedy was unavailable to him. Therefore, there is no genuine dispute as to whether Smith had an adequate state-law remedy for the deprivation of his property. I find that defendants are entitled to summary judgment on Smith's third claim as well.

**IV.     Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 19]** is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly and CLOSE THIS CASE.

IT IS SO ORDERED.

DATED: March 9, 2023

_____
Cristina D. Silva
United States District Judge